

Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE:<br><br>DAVID WAYNE SHEPPARD and<br>TENA MARIE SHEPPARD,<br><br>               Debtors. | CASE NO. 2:16-bk-20208<br><br>CHAPTER 13<br><br><br>JUDGE FRANK W. VOLK |
| TENA MARIE SHEPPARD,<br><br>               Plaintiff,<br>v.<br><br>U.S. DEPARTMENT OF EDUCATION;<br>WEST VIRGINIA JUNIOR COLLEGE,<br><br>               Defendants. | ADVERSAY PROCEEDING NO.<br>2:16-ap-02049 |

## MEMORANDUM OPINION AND ORDER

Pending is the motion to dismiss by the Defendant, the United States Department of Education, filed December 5, 2016 [Dckt. 23]. The Plaintiff, Tena Marie Sheppard, responded in opposition to the motion to dismiss on December 12, 2016 [Dckt. 27], and the United States Department of Education ("the Department") replied on January 18, 2017 [Dckt. 28]. The motion to dismiss is ready for adjudication.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

Although the Department has filed its motion to dismiss pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, the grounds for dismissal better align with Rule 12(b)(1).

### I.

Mrs. Sheppard and her husband have been deemed permanently disabled by the Social Security Administration (Reply ¶¶ 4-7). On April 22, 2016, Mrs. Sheppard, along with her husband, filed a joint Chapter 13 petition [BK Dckt. 1]. The Sheppards have proposed a Chapter 13 plan that provides for a monthly payment of $854.69 for 66 months [BK Dckt. 26]. However, their disposable income amounts to only $444.68 [BK Dckt 16]. At this time, the proposed Chapter 13 plan remains unconfirmed. A confirmation hearing is scheduled for March 1, 2017 [BK Dckt. 79].

Mrs. Sheppard filed this adversary proceeding to discharge her student loans on August 17, 2016 [Dckt. 1]. In the complaint, Mrs. Sheppard alleges that the Department and West Virginia Junior College are non-priority unsecured creditors in the associated bankruptcy case (Comp. ¶ 2). Further, she alleges that the repayment of her student loans imposes an undue hardship because she is disabled and unable to work (Comp. ¶ 12). Mrs. Sheppard seeks a declaratory judgment as to the dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(8), arguing both that the subject loans do not qualify as educational loans and, in the alternative, that the loans cause undue hardship (Comp. ¶¶ 10 & 11). On October 7, 2016, the Department filed a Proof of Claim asserting Mrs. Sheppard owed $15,310.73 for unpaid student loans (Motion to Dismiss Memo. ¶ 2). On December 5, 2016, the Department moved to dismiss the adversary proceeding, stating that the matter was not prudentially ripe [Dckt. 23]. Mrs. Sheppard answered [Dckt. 27] and the Department replied [Dckt. 28].As of this date, West Virginia Junior College has neither answered nor otherwise moved.

II.

    A.  **Governing Standard**

    As noted, the Department moves to dismiss pursuant to Rule 12(b)(6).Inasmuch as it argues lack of ripeness, however, the Department challenges the Court's subject-matter jurisdiction. Accordingly, the Court analyzes the matter pursuant to Rule 12(b)(1), as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

    Rule 12(b)(1) provides for a dismissal if the court lacks subject-matter jurisdiction. The Court has statutory subject-matter jurisdiction under 28 U.S.C. § 1334(b). A bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). The Court "may hear and determine" cases and core proceedings "arising under" the Bankruptcy Code or "arising in" a case under the Code. § 157(b)(1). The determination of the dischargeability of a debt is specifically listed as a core proceeding under 28 U.S.C. § 157(b)(2)(I).

    A defendant may challenge subject-matter jurisdiction facially or factually. *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009). A facial challenge asserts the allegations in the complaint are insufficient to establish subject-matter jurisdiction. *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999).  This type of challenge involves the same procedural protections customarily available to a plaintiff under Rule 12(b)(6). *Kerns*, 585 F.3d at 192. In sum, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

    When a defendant asserts "that the jurisdictional allegations of the complaint [are] not true," he is asserting a factual challenge. *Id.* (internal quotation marks omitted)(quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When a challenge is factual, "the court may look

3

beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Stahlman v. U.S.*, 995 F. Supp. 2d 446, 451 (D. Md. 2014). The presumption of truthfulness available under Rule 12(b)(6) does not apply. *Kerns*, 585 F.3d at 192.

Here, the Department asserts that the complaint fails to allege sufficient facts to support the exercise of subject matter jurisdiction. That is a facial challenge. The Court will thus treat as true the facts alleged in the complaint, along with affording Mrs. Sheppard the reasonable inferences flowing therefrom.

### B. Law and Analysis

The Department asserts that Mrs. Sheppard's undue hardship challenge lacks prudential ripeness. It contends the dischargeability of a student loan does not ripen until at or near the time a Chapter 13 discharge is granted. Although a bankruptcy court is given statutory and adjudicatory subject-matter jurisdiction under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157, ripeness involves constitutional and prudential subject-matter jurisdiction. U.S. Const. art. III, § 2, cl. 1. "Ripeness has two components: constitutional ripeness and prudential ripeness." *Educ. Credit Mgmt. Corp. v. Coleman*, 560 F.3d 1000, 1004 (9th Cir. 2009).

#### a. Constitutional Ripeness

For constitutional ripeness to exist, the matter presented must amount to a "case or controversy." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979). This requires asking whether the "conflicting contentions of the parties . . . present real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract."

4

*Id*. (internal quotation marks omitted) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88 (1945)). Precedent indicates the constitutional ripeness of a student loan discharge action arises when the debtor files for bankruptcy. *Cassim v. Educ. Credit Mgmt. Corp.*, 597 F.3d 432440 (6th Cir. 2010); *Coleman*, 560 F.3d at 1005. Our court of appeals has not spoken directly to the point, indicating instead that it would "decline- to adopt a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments under a confirmed Chapter 13 plan." *Ekenasi v. Educ. Res. Inst.*, 325 F.3d 541, 547 (4th Cir. 2003).

Inasmuch as Mrs. Sheppard has sought relief under Chapter 13, her dischargeability suit is constitutionally ripe.

### b. Prudential Ripeness

As noted, a matter that is constitutionally ripe must also be prudentially ripe. The Supreme Court has held that "[p]roblems of prematurity and abstractness may well present 'insuperable obstacles' to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present." *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588 (1972) (quoting *Rescue Army v. Mun. Ct. of L.A.*, 331 U.S. 549 (1947)). On the precise question respecting prudential ripeness of a student loan dischargeability action, the United States Court of Appeals for the Eighth Circuit concluded prudential ripeness is absent until "relatively close" to the actual date that a Chapter 13 discharge is granted. *Bender v. Educ. Credit Mgmt. Corp.*, 368 F.3d 846, 848 (8th Cir. 2004).

Our court of appeals appears to tip toward this position. It has concluded that the matter would have to qualify as an "exceptional circumstance" to be considered ripe prior to discharge:

5

> it will be most difficult for a debtor, who has advanced his education at the expense of government-guaranteed loans, to prove with the requisite certainty that the repayment of his student loan obligations will be an "undue burden" on him during a significant portion of the repayment period of the student loans when the debtor chooses to make that claim far in advance of the expected completion date of his plan.

*Ekenasi*, 325 F.3d at 547.

In *Ekenasi*, the debtor claimed undue hardship when attempting to discharge his student loan obligations. *Id.* at 544. At the time that the adversary proceeding was filed, the debtor's Chapter 13 plan had been confirmed for three months. *Id*. The bankruptcy court granted the debtor a complete discharge of his student loan obligations because the debtor was unlikely to increase his income or his disposable income after the plan's conclusion. *Id*. On appeal, the district court affirmed. *Id*. The court of appeals disagreed, concluding that a dischargeability determination so early in the case required too much speculation. *Id*. at 548. Although the plan had been confirmed, completion was two years away. *Id*. Our court of appeals noted that when the plan was scheduled to conclude, three of the debtor's six children would no longer be dependents. *Id*. at 549. Further, the debtor's obligations to general unsecured creditors would be discharged in their entirety. *Id*. These changes would have potentially increased the debtor's disposable income during the life of the plan, which would have relieved any undue hardship. *Id*.

Here, Mrs. Sheppard asserts that the repayment of her student loans creates an undue hardship because both she and her husband are deemed permanently disabled by the Social Security Administration (Resp. ¶ 3). Because of their disabilities, the Sheppards contend that their circumstances will not change in the future (*Id*.). Although their incomes appear to be fixed, discharging Mrs. Sheppard's student loans would still require a great deal of speculation on the Court's part. Unlike the Chapter 13 plan in *Ekenasi*, Mrs. Sheppard's Chapter 13 plan has not been confirmed. Further, her proposed plan is unfeasible because her plan payments greatly outweigh her disposable income. Allowing this adversary proceeding to continue would require the Court to speculate not only regarding the confirmability of the proposed plan, but also that the

Sheppards will obtain a Chapter 13 discharge at the plan's conclusion, which is at least five years away. Assuming a modified plan produced a feasible path forward, at least one bankruptcy court has astutely observed as follows:

> Roughly 60% of Chapter 13 cases in this district do not result in a discharge, usually because of the debtor's inability to make the required plan payments for the requisite three or five years. Given the strong possibility that a Chapter 13 case will be dismissed long before discharge can occur, a determination of undue hardship early in the case would likely be rendered unnecessary and irrelevant.

*In re Brantley*, No. 15-81516-WRS, 2016 WL 3003429, at *3 (Bankr. M.D. Ala. May 17, 2016)

In view of this necessary speculation, the Court concludes that Mrs. Sheppard's adversary proceeding is premature and outside the boundaries of prudential ripeness.[1] Additionally, the Court concludes that dismissal does not work a sustainable hardship on the parties. *See In re Brantley*, at *4 (While Brantley would understandably want to know whether the Chapter 13 payments she is making will obtain a discharge of her student loans, the Defendants have an equally compelling interest in avoiding potentially unnecessary litigation. Also, the Court is disinclined to keep the proceeding open in perpetual stasis, draining the Court's resources, for five years while Brantley completes her plan payments.").

### III.

Based upon the foregoing discussion, it is, accordingly, **ORDERED** that the United States Department of Education's Motion to Dismiss [Dckt. 23] be, and is hereby, **GRANTED**.

The Clerk shall transmit a copy of this written opinion and order to all entities entitled to notice.

---

[1] While the matter is not prudentially ripe at this time, there may be an administrative remedy.